Ex. "A"

1997 EDITION

## AIA DOCUMENT | B141-1997

# *Standard Form of Agreement Between Owner and Architect*
# *with Standard Form of Architect's Services*

**A G R E E M E N T** made as of the  Third    day of May
in the year Two Thousand and One
*(In words, indicate day, month and year)*

**B E T W E E N** the Architect's client identified as the Owner:
*(Name, address and other information)*

The Town of Boxford, Massachusetts
Board of Selectmen
200 Washington Street
Boxford, Massachusetts

and the Architect:
*(Name, address and other information)*

J. Stewart Roberts Associates, Inc.
48 Grove Street
Somerville, MA 02144

For the following Project:
*(Include detailed description of Project)*

A new Town Hall of approximately 12,000 sf and associated sitework
to be located on town owned property on Spofford Road in Boxford,
MA

The Owner and Architect agree as follows.

This document has important
legal consequences.
Consultation with an
attorney is encouraged
with respect to its
completion or modification.

TABLE OF ARTICLES

1.1  INITIAL INFORMATION

1.2  RESPONSIBILITIES OF THE

PARTIES

1.3  TERMS AND CONDITIONS

1.4  SCOPE OF SERVICES AND

OTHER SPECIAL TERMS

AND CONDITIONS

1.5  COMPENSATION



©1997  A I A ®
AIA DOCUMENT B141-1997
STANDARD FORM
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

Copyright 1917, 1926, 1948, 1951, 1953, 1958, 1961, 1963, 1966, 1967, 1970, 1974, 1977, 1987, ©1997 by The American
Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written
permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecu-
tion.

1-1

## ARTICLE 1.1 INITIAL INFORMATION

**1.1.1** This Agreement is based on the following information and assumptions.
*(Note the disposition for the following items by inserting the requested information or a statement such as "not applicable," "unknown at time of execution" or "to be determined later by mutual agreement.")*

**1.1.2 PROJECT PARAMETERS**
**1.1.2.1** The objective or use is:
*(Identify or describe, if appropriate, proposed use or goals.)*

A New Building for Town Offices

**1.1.2.2** The physical parameters are:
*(Identify or describe, if appropriate, size, location, dimensions, or other pertinent information, such as geotechnical reports about the site.)*

Approximately 12,000 Sf to be located on town owned property on Spofford Road

**1.1.2.3** The Owner's Program is:
*(Identify documentation or state the manner in which the program will be developed.)*

The Owner has produced a draft program for review and refinement by the Architect

**1.1.2.4** The legal parameters are:
*(Identify pertinent legal information, including, if appropriate, land surveys and legal descriptions and restrictions of the site.)*

Buildig to be located on property identified on a plan of land entitled "Boxford 81 - Acre Municipal Site" prepared by Weston & Sampson Engineers, Inc., October 1998.

**1.1.2.5** The financial parameters are as follows.
.1 Amount of the Owner's overall budget for the Project, including the Architect's compensation, is: To be determined

.2 Amount of the Owner's budget for the Cost of the Work, excluding the Architect's compensation, is: To be determined

**1.1.2.6** The time parameters are:
*(Identify, if appropriate, milestone dates, durations or fast track scheduling.)*

Construction Documents to be completed by December 31, 2001
Bidding in the Spring of 2002
Construction to be completed by Fall of 2003

**1.1.2.7** The proposed procurement or delivery method for the Project is:
*(Identify method such as competitive bid, negotiated contract, or construction management.)*

Competitive Public Bid

**1.1.2.8** Other parameters are:
*(Identify special characteristics or needs of the Project such as energy, environmental or historic preservation requirements.)*

Site planning shall take into consideration: future town facilities which may also be located on the site; enviromental issues including wetlands and septic system design; and sensitivity to impact on the neighborhood.



© 1997  AIA®
AIA DOCUMENT B141-1997
STANDARD FORM
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W
Washington, D.C. 20006-52!

1-2

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**1.1.3   PROJECT TEAM**

**1.1.3.1**   The Owner's Designated Representative is:
*(List name, address and other information.)*

Joyce Ricklefs, Chair, Town Hall Building Committee

**1.1.3.2**   The persons or entities, in addition to the Owner's Designated Representative, who are required to review the Architect's submittals to the Owner are:
*(List name, address and other information.)*

Town Hall Building Committee
Town of Boxford Regulatory Review Agencies: Inspections Department; Fire Department; Safety Officer; Police Department; Zoning Board of Appeals; Board of Selectmen; Planning Board; Board of Health; Conservation Comission; ADA Coordinator; Computer Management Committee; and Cable Committee

**1.1.3.3**   The Owner's other consultants and contractors are:
*(List discipline and, if known, identify them by name and address.)*

To be determined later, may include but is not limited to, consultant on public water supply, consultant on information technologies, consultant on cable equipment design, and consultant on telecommunications equipment.

**1.1.3.4**   The Architect's Designated Representative is:
*(List name, address and other information.)*

Stewart Roberts AIA, Principal in Charge
J. Stewart Roberts Associates, Inc.
48 Grove Street, Somerville, MA

**1.1.3.5**   The consultants retained at the Architect's expense are:
*(List discipline and, if known, identify them by name and address.)*

Structural - LeMessurierConsultants,Cambridge, Ma
MEP - Building Engineering Resources,NorthEaston, MA
Civil, Landscape - David E. RossAssociates, Inc., Ayer, MA.
Estimator - Construction Consulting, Dorchester, MA

**1.1.4**   Other important initial information is:

**1.1.5**   When the services under this Agreement include contract administration services, the General Conditions of the Contract for Construction shall be the edition of AIA Document A201 current as of the date of this Agreement, or as follows:

**1.1.6**   The information contained in this Article 1.1 may be reasonably relied upon by the Owner and Architect in determining the Architect's compensation. Both parties, however, recognize that such information may change and, in that event, the Owner and the Architect shall negotiate appropriate adjustments in schedule, compensation and Change in Services in accordance with Paragraph 1.3.3.



© 1997   A I A®
AIA DOCUMENT B141-1997
STANDARD FORM
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

1-3

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 1.2 RESPONSIBILITIES OF THE PARTIES

1.2.1    The Owner and the Architect shall cooperate with one another to fulfill their respective obligations under this Agreement. Both parties shall endeavor to maintain good working relationships among all members of the Project team.

### 1.2.2    OWNER

1.2.2.1  Unless otherwise provided under this Agreement, the Owner shall provide full information in a timely manner regarding requirements for and limitations on the Project. The Owner shall furnish to the Architect, within 15 days after receipt of a written request, information necessary and relevant for the Architect to evaluate, give notice of or enforce lien rights.

1.2.2.2  The Owner shall periodically update the budget for the Project, including that portion allocated for the Cost of the Work. The Owner shall not significantly increase or decrease the overall budget, the portion of the budget allocated for the Cost of the Work, or contingencies included in the overall budget or a portion of the budget, without the agreement of the Architect to a corresponding change in the Project scope and quality.

1.2.2.3  The Owner's Designated Representative identified in Paragraph 1.1.3 shall be authorized to act on the Owner's behalf with respect to the Project. The Owner or the Owner's Designated Representative shall render decisions in a timely manner pertaining to documents submitted by the Architect in order to avoid unreasonable delay in the orderly and sequential progress of the Architect's services.

1.2.2.4  The Owner shall furnish the services of consultants other than those designated in Paragraph 1.1.3 or authorize the Architect to furnish them as a Change in Services when such services are requested by the Architect and are reasonably required by the scope of the Project.

1.2.2.5  Unless otherwise provided in this Agreement, the Owner shall furnish tests, inspections and reports required by law or the Contract Documents, such as structural, mechanical, and chemical tests, tests for air and water pollution, and tests for hazardous materials.

1.2.2.6  The Owner shall furnish all legal, insurance and accounting services, including auditing services, that may be reasonably necessary at any time for the Project to meet the Owner's needs and interests.

1.2.2.7  The Owner shall provide prompt written notice to the Architect if the Owner becomes aware of any fault or defect in the Project, including any errors, omissions or inconsistencies in the Architect's Instruments of Service.

### 1.2.3    ARCHITECT

1.2.3.1  The services performed by the Architect, Architect's employees and Architect's consultants shall be as enumerated in Article 1.4.

1.2.3.2  The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Project. The Architect shall submit for the Owner's approval a schedule for the performance of the Architect's services which initially shall be consistent with the time periods established in Subparagraph 1.1.2.6 and which shall be adjusted, if necessary, as the Project proceeds. This schedule shall include allowances for periods of time required for the Owner's review, for the performance of the Owner's consultants, and for approval of submissions by authorities having jurisdiction over the Project. Time limits established by this schedule approved by the Owner shall not, except for reasonable cause, be exceeded by the Architect or Owner.



© 1997   A I A ®
AIA DOCUMENT B141-1997
STANDARD FORM
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

1-4

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**1.2.3.3** The Architect's Designated Representative identified in Paragraph 1.1.3 shall be authorized to act on the Architect's behalf with respect to the Project.

**1.2.3.4** The Architect shall maintain the confidentiality of information specifically designated as confidential by the Owner, unless withholding such information would violate the law, create the risk of significant harm to the public or prevent the Architect from establishing a claim or defense in an adjudicatory proceeding. The Architect shall require of the Architect's consultants similar agreements to maintain the confidentiality of information specifically designated as confidential by the Owner.

**1.2.3.5** Except with the Owner's knowledge and consent, the Architect shall not engage in any activity, or accept any employment, interest or contribution that would reasonably appear to compromise the Architect's professional judgment with respect to this Project.

**1.2.3.6** The Architect shall review laws, codes, and regulations applicable to the Architect's services. The Architect shall respond in the design of the Project to requirements imposed by governmental authorities having jurisdiction over the Project.

**1.2.3.7** The Architect shall be entitled to rely on the accuracy and completeness of services and information furnished by the Owner. The Architect shall provide prompt written notice to the Owner if the Architect becomes aware of any errors, omissions or inconsistencies in such services or information.

## ARTICLE 1.3 TERMS AND CONDITIONS

### 1.3.1 COST OF THE WORK

**1.3.1.1** The Cost of the Work shall be the total cost or, to the extent the Project is not completed, the estimated cost to the Owner of all elements of the Project designed or specified by the Architect.

**1.3.1.2** The Cost of the Work shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect, including the costs of management or supervision of construction or installation provided by a separate construction manager or contractor, plus a reasonable allowance for their overhead and profit. In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work.

**1.3.1.3** The Cost of the Work does not include the compensation of the Architect and the Architect's consultants, the costs of the land, rights-of-way and financing or other costs that are the responsibility of the Owner.

### 1.3.2 INSTRUMENTS OF SERVICE

**1.3.2.1** Drawings, specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service for use solely with respect to this Project. The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service and shall retain all common law, statutory and other reserved rights, including copyrights.

**1.3.2.2** Upon execution of this Agreement, the Architect grants to the Owner a nonexclusive license to reproduce the Architect's Instruments of Service solely for purposes of constructing, using and maintaining the Project, provided that the Owner shall comply with all obligations, including prompt payment of all sums when due, under this Agreement. The Architect shall



©1997 AIA®
AIA DOCUMENT B141-1997
STANDARD FORM
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

1-5

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

obtain similar nonexclusive licenses from the Architect's consultants consistent with this Agreement. Any termination of this Agreement prior to completion of the Project shall terminate this license. Upon such termination, the Owner shall refrain from making further reproductions of Instruments of Service and shall return to the Architect within seven days of termination all originals and reproductions in the Owner's possession or control. If and upon the date the Architect is adjudged in default of this Agreement, the foregoing license shall be deemed terminated and replaced by a second, nonexclusive license permitting the Owner to authorize other similarly credentialed design professionals to reproduce and, where permitted by law, to make changes, corrections or additions to the Instruments of Service solely for purposes of completing, using and maintaining the Project.

**1.3.2.3** Except for the licenses granted in Subparagraph 1.3.2.2, no other license or right shall be deemed granted or implied under this Agreement. The Owner shall not assign, delegate, sublicense, pledge or otherwise transfer any license granted herein to another party without the prior written agreement of the Architect. However, the Owner shall be permitted to authorize the Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers to reproduce applicable portions of the Instruments of Service appropriate to and for use in their execution of the Work by license granted in Subparagraph 1.3.2.2. Submission or distribution of Instruments of Service to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the reserved rights of the Architect and the Architect's consultants. The Owner shall not use the Instruments of Service for future additions or alterations to this Project or for other projects, unless the Owner obtains the prior written agreement of the Architect and the Architect's consultants. Any unauthorized use of the Instruments of Service shall be at the Owner's sole risk and without liability to the Architect and the Architect's consultants.

**1.3.2.4** Prior to the Architect providing to the Owner any Instruments of Service in electronic form or the Owner providing to the Architect any electronic data for incorporation into the Instruments of Service, the Owner and the Architect shall by separate written agreement set forth the specific conditions governing the format of such Instruments of Service or electronic data, including any special limitations or licenses not otherwise provided in this Agreement.

**1.3.3 CHANGE IN SERVICES**
**1.3.3.1** Change in Services of the Architect, including services required of the Architect's consultants, may be accomplished after execution of this Agreement, without invalidating the Agreement, if mutually agreed in writing, if required by circumstances beyond the Architect's control, or if the Architect's services are affected as described in Subparagraph 1.3.3.2. In the absence of mutual agreement in writing, the Architect shall notify the Owner prior to providing such services. If the Owner deems that all or a part of such Change in Services is not required, the Owner shall give prompt written notice to the Architect, and the Architect shall have no obligation to provide those services. Except for a change due to the fault of the Architect, Change in Services of the Architect shall entitle the Architect to an adjustment in compensation pursuant to Paragraph 1.5.2, and to any Reimbursable Expenses described in Subparagraph 1.3.9.2 and Paragraph 1.5.5.

**1.3.3.2** If any of the following circumstances affect the Architect's services for the Project, the Architect shall be entitled to an appropriate adjustment in the Architect's schedule and compensation:
    .1 change in the instructions or approvals given by the Owner that necessitate revisions in Instruments of Service;
    .2 enactment or revision of codes, laws or regulations or official interpretations which necessitate changes to previously prepared Instruments of Service;



© 1997 AIA®
**AIA DOCUMENT B141-1997**
STANDARD FORM —
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

1-6

.3   decisions of the Owner not rendered in a timely manner;
.4   significant change in the Project including, but not limited to, size, quality, complexity, the Owner's schedule or budget, or procurement method;
.5   failure of performance on the part of the Owner or the Owner's consultants or contractors;
.6   preparation for and attendance at a public hearing, a dispute resolution proceeding or a legal proceeding except where the Architect is party thereto;
.7   change in the information contained in Article 1.1.

**1.3.4    MEDIATION**

**1.3.4.1**  Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party. If such matter relates to or is the subject of a lien arising out of the Architect's services, the Architect may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the matter by mediation or by arbitration.

**1.3.4.2**  The Owner and Architect shall endeavor to resolve claims, disputes and other matters in question between them by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**1.3.4.3**  The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**1.3.5    ARBITRATION**

**1.3.5.1**  Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with Paragraph 1.3.4.

**1.3.5.2**  Claims, disputes and other matters in question between the parties that are not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association.

**1.3.5.3**  A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

**1.3.5.4**  No arbitration arising out of or relating to this Agreement shall include, by consolidation or joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement and signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim,



© 1997 AIA®
**AIA DOCUMENT B141-1997**
**STANDARD FORM**
**AGREEMENT**

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**1-7**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

**1.3.5.5** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

**1.3.6    CLAIMS FOR CONSEQUENTIAL DAMAGES**
The Architect and the Owner waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement. This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Paragraph 1.3.8.

**1.3.7    MISCELLANEOUS PROVISIONS**
**1.3.7.1** This Agreement shall be governed by the law of the principal place of business of the Architect, unless otherwise provided in Paragraph 1.4.2.

**1.3.7.2** Terms in this Agreement shall have the same meaning as those in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**1.3.7.3** Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion. In no event shall such statutes of limitations commence to run any later than the date when the Architect's services are substantially completed.

**1.3.7.4** To the extent damages are covered by property insurance during construction, the Owner and the Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. The Owner or the Architect, as appropriate, shall require of the contractors, consultants, agents and employees of any of them similar waivers in favor of the other parties enumerated herein.

**1.3.7.5** Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

**1.3.7.6** Unless otherwise provided in this Agreement, the Architect and Architect's consultants shall have no responsibility for the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials or toxic substances in any form at the Project site.

**1.3.7.7** The Architect shall have the right to include photographic or artistic representations of the design of the Project among the Architect's promotional and professional materials. The Architect shall be given reasonable access to the completed Project to make such representations. However, the Architect's materials shall not include the Owner's confidential or proprietary information if the Owner has previously advised the Architect in writing of the specific information considered by the Owner to be confidential or proprietary. The Owner shall provide professional credit for the Architect in the Owner's promotional materials for the Project.



© 1997    A I A ©
**AIA DOCUMENT B141-1997
STANDARD FORM
AGREEMENT**

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**1-8**

WARNING:   Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**1.3.7.8** If the Owner requests the Architect to execute certificates, the proposed language of such certificates shall be submitted to the Architect for review at least 14 days prior to the requested dates of execution. The Architect shall not be required to execute certificates that would require knowledge, services or responsibilities beyond the scope of this Agreement.

**1.3.7.9** The Owner and Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither the Owner nor the Architect shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to an institutional lender providing financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under this Agreement. The Architect shall execute all consents reasonably required to facilitate such assignment.

**1.3.8    TERMINATION OR SUSPENSION**
**1.3.8.1** If the Owner fails to make payments to the Architect in accordance with this Agreement, such failure shall be considered substantial nonperformance and cause for termination or, at the Architect's option, cause for suspension of performance of services under this Agreement. If the Architect elects to suspend services, prior to suspension of services, the Architect shall give seven days' written notice to the Owner. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services. Before resuming services, the Architect shall be paid all sums due prior to suspension and any expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.

**1.3.8.2** If the Project is suspended by the Owner for more than 30 consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Architect shall be compensated for expenses incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.

**1.3.8.3** If the Project is suspended or the Architect's services are suspended for more than 90 consecutive days, the Architect may terminate this Agreement by giving not less than seven days' written notice.

**1.3.8.4** This Agreement may be terminated by either party upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

**1.3.8.5** This Agreement may be terminated by the Owner upon not less than seven days' written notice to the Architect for the Owner's convenience and without cause.

**1.3.8.6** In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Subparagraph 1.3.8.7.

**1.3.8.7** Termination Expenses are in addition to compensation for the services of the Agreement and include expenses directly attributable to termination for which the Architect is not otherwise compensated, plus an amount for the Architect's anticipated profit on the value of the services not performed by the Architect.



© 1997  A I A ®
**AIA DOCUMENT B141-1997**
STANDARD FORM
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

1-9

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**1.3.9    PAYMENTS TO THE ARCHITECT**

**1.3.9.1** Payments on account of services rendered and for Reimbursable Expenses incurred shall be made monthly upon presentation of the Architect's statement of services. No deductions shall be made from the Architect's compensation on account of penalty, liquidated damages or other sums withheld from payments to contractors, or on account of the cost of changes in the Work other than those for which the Architect has been adjudged to be liable.

**1.3.9.2** Reimbursable Expenses are in addition to compensation for the Architect's services and include expenses incurred by the Architect and Architect's employees and consultants directly related to the Project, as identified in the following Clauses:

.1   transportation in connection with the Project, authorized out-of-town travel and subsistence, and electronic communications;

.2   fees paid for securing approval of authorities having jurisdiction over the Project;

.3   reproductions, plots, standard form documents, postage, handling and delivery of Instruments of Service;

.4   expense of overtime work requiring higher than regular rates if authorized in advance by the Owner;

.5   renderings, models and mock-ups requested by the Owner;

.6   expense of professional liability insurance dedicated exclusively to this Project or the expense of additional insurance coverage or limits requested by the Owner in excess of that normally carried by the Architect and the Architect's consultants;

.7   reimbursable expenses as designated in Paragraph 1.5.5;

.8   other similar direct Project-related expenditures.

**1.3.9.3** Records of Reimbursable Expenses, of expenses pertaining to a Change in Services, and of services performed on the basis of hourly rates or a multiple of Direct Personnel Expense shall be available to the Owner or the Owner's authorized representative at mutually convenient times.

**1.3.9.4** Direct Personnel Expense is defined as the direct salaries of the Architect's personnel engaged on the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, employee retirement plans and similar contributions.

**ARTICLE 1.4 SCOPE OF SERVICES AND OTHER SPECIAL TERMS AND CONDITIONS**

**1.4.1    Enumeration of Parts of the Agreement.** This Agreement represents the entire and integrated agreement between the Owner and the Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect. This Agreement comprises the documents listed below.

**1.4.1.1**  Standard Form of Agreement Between Owner and Architect, AIA Document B141-1997.

**1.4.1.2**  Standard Form of Architect's Services: Design and Contract Administration, AIA Document B141-1997, or as follows:
*(List other documents, if any, delineating Architect's scope of services.)*

**1.4.1.3**  Other documents as follows:
*(List other documents, if any, forming part of the Agreement.)*



© 1997 AIA®
**AIA DOCUMENT B141-1997**
**STANDARD FORM**
**AGREEMENT**

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

1-10

**WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.**

1.4.2   Special Terms and Conditions. Special terms and conditions that modify this Agreement are as follows:

Addendim to the Owner-Architect Agteement, AIA Document B141
(1997 Edition) Between the Town of Boxford , Massachusetts (Owner)
and J. Stewart Roberts Associates, Inc. (Achitect)

## ARTICLE 1.5 COMPENSATION

1.5.1   For the Architect's services as described under Article 1.4, compensation shall be computed as follows:

| | |
|---|---|
| Schematic Design | $33,650 |
| Design Development | $57,880 |
| Construction Documents | $89,780 |
| Bidding | $9,660 |
| Construction Administration | $70,150 |
| Total | $261,120 |

1.5.2   If the services of the Architect are changed as described in Subparagraph 1.3.3.1, the Architect's compensation shall be adjusted. Such adjustment shall be calculated as described below or, if no method of adjustment is indicated in this Paragraph 1.5.2, in an equitable manner.
*(Insert basis of compensation, including rates and multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply.)*

Hourly at the standard Hourly Rates

| | |
|---|---|
| Principal | $110/hr |
| Project Manager | $80/hr |
| Technical Staff | $65/hr |

1.5.3   For a Change in Services of the Architect's consultants, compensation shall be computed as a multiple of   One and One Tenth         (   1.1   ) times the amounts billed to the Architect for such services.

1.5.4   For Reimbursable Expenses as described in Subparagraph 1.3.9.2, and any other items included in Paragraph 1.5.5 as Reimbursable Expenses, the compensation shall be computed as a multiple of   One and One Tenth         (   1.1   ) times the expenses incurred by the Architect, and the Architect's employees and consultants.

1.5.5   Other Reimbursable Expenses, if any, are as follows:



© 1 9 9 7   A I A ®
AIA DOCUMENT B141-1997
STANDARD FORM
AGREEMENT

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

1·11

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**1.5.6**    The rates and multiples for services of the Architect and the Architect's consultants as set forth in this Agreement shall be adjusted in accordance with their normal salary review practices.

**1.5.7**    An initial payment of                                                      Dollars
($                        ) shall be made upon execution of this Agreement and is the minimum payment under this Agreement. It shall be credited to the Owner's account at final payment. Subsequent payments for services shall be made monthly, and where applicable, shall be in proportion to services performed on the basis set forth in this Agreement.

**1.5.8**    Payments are due and payable                                (           ) days from the date of the Architect's invoice. Amounts unpaid                        (           ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Architect.
*(Insert rate of interest agreed upon.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Architect's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Specific legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**1.5.9**    If the services covered by this Agreement have not been completed within Thirty Six                        ( 36        ) months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Paragraph 1.5.2.

This Agreement entered into as of the day and year first written above.

**O W N E R** *(Signature)*                              **A R C H I T E C T** *(Signature)*

Neil S. Olansky, Chair
**Board of Selectmen**                              J. Stewart Roberts, President
**Town of Boxford, Massachusetts**                J. Stewart Roberts Associates, Inc.

*(Printed name and title)*                              *(Printed name and title)*

**CAUTION:** *You should sign an original AIA document or a licensed reproduction. Originals contain the AIA logo printed in red; licensed reproductions are those produced in accordance with the Instructions to this document.*



©1997  AIA®
**AIA DOCUMENT B141-1997**
**STANDARD FORM**
**AGREEMENT**

The American Institute
of Architects
1735 New York Avenue, N.W
Washington, D.C. 20006-529

1-12

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

# AIA DOCUMENT | B141-1997

## *Standard Form of Architect's Services: Design and Contract Administration*

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

### TABLE OF ARTICLES

**2.1 PROJECT ADMINISTRATION SERVICES**

**2.2 SUPPORTING SERVICES**

**2.3 EVALUATION AND PLANNING SERVICES**

**2.4 DESIGN SERVICES**

**2.5 CONSTRUCTION PROCUREMENT SERVICES**

**2.6 CONTRACT ADMINISTRATION SERVICES**

**2.7 FACILITY OPERATION SERVICES**

**2.8 SCHEDULE OF SERVICES**

**2.9 MODIFICATIONS**



© 1997  A I A®
AIA DOCUMENT B141-1997
STANDARD FORM
SERVICES

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

Copyright 1917, 1926, 1948, 1951, 1953, 1958, 1961, 1963, 1966, 1967, 1970, 1974, 1977, 1987, ©1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.
WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

2-1

## ARTICLE 2.1 PROJECT ADMINISTRATION SERVICES

2.1.1    The Architect shall manage the Architect's services and administer the Project. The Architect shall consult with the Owner, research applicable design criteria, attend Project meetings, communicate with members of the Project team and issue progress reports. The Architect shall coordinate the services provided by the Architect and the Architect's consultants with those services provided by the Owner and the Owner's consultants.

2.1.2    When Project requirements have been sufficiently identified, the Architect shall prepare, and periodically update, a Project schedule that shall identify milestone dates for decisions required of the Owner, design services furnished by the Architect, completion of documentation provided by the Architect, commencement of construction and Substantial Completion of the Work.

2.1.3    The Architect shall consider the value of alternative materials, building systems and equipment, together with other considerations based on program, budget and aesthetics in developing the design for the Project.

2.1.4    Upon request of the Owner, the Architect shall make a presentation to explain the design of the Project to representatives of the Owner.

2.1.5    The Architect shall submit design documents to the Owner at intervals appropriate to the design process for purposes of evaluation and approval by the Owner. The Architect shall be entitled to rely on approvals received from the Owner in the further development of the design.

2.1.6    The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

### 2.1.7    EVALUATION OF BUDGET AND COST OF THE WORK

2.1.7.1 When the Project requirements have been sufficiently identified, the Architect shall prepare a preliminary estimate of the Cost of the Work. This estimate may be based on current area, volume or similar conceptual estimating techniques. As the design process progresses through the end of the preparation of the Construction Documents, the Architect shall update and refine the preliminary estimate of the Cost of the Work. The Architect shall advise the Owner of any adjustments to previous estimates of the Cost of the Work indicated by changes in Project requirements or general market conditions. If at any time the Architect's estimate of the Cost of the Work exceeds the Owner's budget, the Architect shall make appropriate recommendations to the Owner to adjust the Project's size, quality or budget, and the Owner shall cooperate with the Architect in making such adjustments.

2.1.7.2 Evaluations of the Owner's budget for the Project, the preliminary estimate of the Cost of the Work and updated estimates of the Cost of the Work prepared by the Architect represent the Architect's judgment as a design professional familiar with the construction industry. It is recognized, however, that neither the Architect nor the Owner has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from the Owner's budget for the Project or from any estimate of the Cost of the Work or evaluation prepared or agreed to by the Architect.



© 1997   A I A ®
**AIA DOCUMENT B141-1997**
STANDARD FORM
SERVICES

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**2-2**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

2.1.7.3  In preparing estimates of the Cost of the Work, the Architect shall be permitted to include contingencies for design, bidding and price escalation; to determine what materials, equipment, component systems and types of construction are to be included in the Contract Documents; to make reasonable adjustments in the scope of the Project and to include in the Contract Documents alternate bids as may be necessary to adjust the estimated Cost of the Work to meet the Owner's budget for the Cost of the Work. If an increase in the Contract Sum occurring after execution of the Contract between the Owner and the Contractor causes the budget for the Cost of the Work to be exceeded, that budget shall be increased accordingly.

2.1.7.4  If bidding or negotiation has not commenced within 90 days after the Architect submits the Construction Documents to the Owner, the budget for the Cost of the Work shall be adjusted to reflect changes in the general level of prices in the construction industry.

2.1.7.5  If the budget for the Cost of the Work is exceeded by the lowest bona fide bid or negotiated proposal, the Owner shall:
   .1  give written approval of an increase in the budget for the Cost of the Work;
   .2  authorize rebidding or renegotiating of the Project within a reasonable time;
   .3  terminate in accordance with Subparagraph 1.3.8.5; or
   .4  cooperate in revising the Project scope and quality as required to reduce the Cost of the Work.

2.1.7.6  If the Owner chooses to proceed under Clause 2.1.7.5.4, the Architect, without additional compensation, shall modify the documents for which the Architect is responsible under this Agreement as necessary to comply with the budget for the Cost of the Work. The modification of such documents shall be the limit of the Architect's responsibility under this Paragraph 2.1.7. The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not construction is commenced.

## ARTICLE 2.2 SUPPORTING SERVICES

2.2.1  Unless specifically designated in Paragraph 2.8.3, the services in this Article 2.2 shall be provided by the Owner or the Owner's consultants and contractors.

2.2.1.1  The Owner shall furnish a program setting forth the Owner's objectives, schedule, constraints and criteria, including space requirements and relationships, special equipment, systems and site requirements.

2.2.1.2  The Owner shall furnish surveys to describe physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data with respect to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark.

2.2.1.3  The Owner shall furnish services of geotechnical engineers which may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate recommendations.



© 1997  AIA ©
AIA DOCUMENT B141-1997
STANDARD FORM
SERVICES

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**2-3**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 2.3 EVALUATION AND PLANNING SERVICES

**2.3.1** The Architect shall provide a preliminary evaluation of the information furnished by the Owner under this Agreement, including the Owner's program and schedule requirements and budget for the Cost of the Work, each in terms of the other. The Architect shall review such information to ascertain that it is consistent with the requirements of the Project and shall notify the Owner of any other information or consultant services that may be reasonably needed for the Project.

**2.3.2** The Architect shall provide a preliminary evaluation of the Owner's site for the Project based on the information provided by the Owner of site conditions, and the Owner's program, schedule and budget for the Cost of the Work.

**2.3.3** The Architect shall review the Owner's proposed method of contracting for construction services and shall notify the Owner of anticipated impacts that such method may have on the Owner's program, financial and time requirements, and the scope of the Project.

## ARTICLE 2.4 DESIGN SERVICES

**2.4.1** The Architect's design services shall include normal structural, mechanical and electrical engineering services.

### 2.4.2 SCHEMATIC DESIGN DOCUMENTS

**2.4.2.1** The Architect shall provide Schematic Design Documents based on the mutually agreed-upon program, schedule, and budget for the Cost of the Work. The documents shall establish the conceptual design of the Project illustrating the scale and relationship of the Project components. The Schematic Design Documents shall include a conceptual site plan, if appropriate, and preliminary building plans, sections and elevations. At the Architect's option, the Schematic Design Documents may include study models, perspective sketches, electronic modeling or combinations of these media. Preliminary selections of major building systems and construction materials shall be noted on the drawings or described in writing.

### 2.4.3 DESIGN DEVELOPMENT DOCUMENTS

**2.4.3.1** The Architect shall provide Design Development Documents based on the approved Schematic Design Documents and updated budget for the Cost of the Work. The Design Development Documents shall illustrate and describe the refinement of the design of the Project, establishing the scope, relationships, forms, size and appearance of the Project by means of plans, sections and elevations, typical construction details, and equipment layouts. The Design Development Documents shall include specifications that identify major materials and systems and establish in general their quality levels.

### 2.4.4 CONSTRUCTION DOCUMENTS

**2.4.4.1** The Architect shall provide Construction Documents based on the approved Design Development Documents and updated budget for the Cost of the Work. The Construction Documents shall set forth in detail the requirements for construction of the Project. The Construction Documents shall include Drawings and Specifications that establish in detail the quality levels of materials and systems required for the Project.

**2.4.4.2** During the development of the Construction Documents, the Architect shall assist the Owner in the development and preparation of: (1) bidding and procurement information which describes the time, place and conditions of bidding; bidding or proposal forms; and the form of agreement between the Owner and the Contractor; and (2) the Conditions of the Contract for Construction (General, Supplementary and other Conditions). The Architect also shall compile the Project Manual that includes the Conditions of the Contract for Construction and Specifications and may include bidding requirements and sample forms.



© 1997  A I A ®
AIA DOCUMENT B141-1997
STANDARD FORM
SERVICES

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

2-4

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

## ARTICLE 2.5 CONSTRUCTION PROCUREMENT SERVICES

**2.5.1** The Architect shall assist the Owner in obtaining either competitive bids or negotiated proposals and shall assist the Owner in awarding and preparing contracts for construction.

**2.5.2** The Architect shall assist the Owner in establishing a list of prospective bidders or contractors.

**2.5.3** The Architect shall assist the Owner in bid validation or proposal evaluation and determination of the successful bid or proposal, if any. If requested by the Owner, the Architect shall notify all prospective bidders or contractors of the bid or proposal results.

### 2.5.4 COMPETITIVE BIDDING

**2.5.4.1** Bidding Documents shall consist of bidding requirements, proposed contract forms, General Conditions and Supplementary Conditions, Specifications and Drawings.

**2.5.4.2** If requested by the Owner, the Architect shall arrange for procuring the reproduction of Bidding Documents for distribution to prospective bidders. The Owner shall pay directly for the cost of reproduction or shall reimburse the Architect for such expenses.

**2.5.4.3** If requested by the Owner, the Architect shall distribute the Bidding Documents to prospective bidders and request their return upon completion of the bidding process. The Architect shall maintain a log of distribution and retrieval, and the amounts of deposits, if any, received from and returned to prospective bidders.

**2.5.4.4** The Architect shall consider requests for substitutions, if permitted by the Bidding Documents, and shall prepare and distribute addenda identifying approved substitutions to all prospective bidders.

**2.5.4.5** The Architect shall participate in or, at the Owner's direction, shall organize and conduct a pre-bid conference for prospective bidders.

**2.5.4.6** The Architect shall prepare responses to questions from prospective bidders and provide clarifications and interpretations of the Bidding Documents to all prospective bidders in the form of addenda.

**2.5.4.7** The Architect shall participate in or, at the Owner's direction, shall organize and conduct the opening of the bids. The Architect shall subsequently document and distribute the bidding results, as directed by the Owner.

### 2.5.5 NEGOTIATED PROPOSALS

**2.5.5.1** Proposal Documents shall consist of proposal requirements, proposed contract forms, General Conditions and Supplementary Conditions, Specifications and Drawings.

**2.5.5.2** If requested by the Owner, the Architect shall arrange for procuring the reproduction of Proposal Documents for distribution to prospective contractors. The Owner shall pay directly for the cost of reproduction or shall reimburse the Architect for such expenses.

**2.5.5.3** If requested by the Owner, the Architect shall organize and participate in selection interviews with prospective contractors.

**2.5.5.4** The Architect shall consider requests for substitutions, if permitted by the Proposal Documents, and shall prepare and distribute addenda identifying approved substitutions to all prospective contractors.



© 1997 AIA®
**AIA DOCUMENT B141-1997**
**STANDARD FORM**
**SERVICES**

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-529.

**2-5**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**2.5.5.5** If requested by the Owner, the Architect shall assist the Owner during negotiations with prospective contractors. The Architect shall subsequently prepare a summary report of the negotiation results, as directed by the Owner.

## ARTICLE 2.6 CONTRACT ADMINISTRATION SERVICES

### 2.6.1   GENERAL ADMINISTRATION

**2.6.1.1**  The Architect shall provide administration of the Contract between the Owner and the Contractor as set forth below and in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement. Modifications made to the General Conditions, when adopted as part of the Contract Documents, shall be enforceable under this Agreement only to the extent that they are consistent with this Agreement or approved in writing by the Architect.

**2.6.1.2**  The Architect's responsibility to provide the Contract Administration Services under this Agreement commences with the award of the initial Contract for Construction and terminates at the issuance to the Owner of the final Certificate for Payment. However, the Architect shall be entitled to a Change in Services in accordance with Paragraph 2.8.2 when Contract Administration Services extend 60 days after the date of Substantial Completion of the Work.

**2.6.1.3**  The Architect shall be a representative of and shall advise and consult with the Owner during the provision of the Contract Administration Services. The Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement unless otherwise modified by written amendment.

**2.6.1.4**  Duties, responsibilities and limitations of authority of the Architect under this Article 2.6 shall not be restricted, modified or extended without written agreement of the Owner and Architect with consent of the Contractor, which consent will not be unreasonably withheld.

**2.6.1.5**  The Architect shall review properly prepared, timely requests by the Contractor for additional information about the Contract Documents. A properly prepared request for additional information about the Contract Documents shall be in a form prepared or approved by the Architect and shall include a detailed written statement that indicates the specific Drawings or Specifications in need of clarification and the nature of the clarification requested.

**2.6.1.6**  If deemed appropriate by the Architect, the Architect shall on the Owner's behalf prepare, reproduce and distribute supplemental Drawings and Specifications in response to requests for information by the Contractor.

**2.6.1.7**  The Architect shall interpret and decide matters concerning performance of the Owner and Contractor under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

**2.6.1.8**  Interpretations and decisions of the Architect shall be consistent with the intent of and reasonably inferable from the Contract Documents and shall be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for the results of interpretations or decisions so rendered in good faith.

**2.6.1.9**  The Architect shall render initial decisions on claims, disputes or other matters in question between the Owner and Contractor as provided in the Contract Documents. However, the Architect's decisions on matters relating to aesthetic effect shall be final if consistent with the intent expressed in the Contract Documents.



© 1997  A I A ®
**AIA DOCUMENT B141-1997**
STANDARD FORM
SERVICES ⁻

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

2-6

**WARNING:** Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**2.6.2   EVALUATIONS OF THE WORK**

**2.6.2.1** The Architect, as a representative of the Owner, shall visit the site at intervals appropriate to the stage of the Contractor's operations, or as otherwise agreed by the Owner and the Architect in Article 2.8, (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect shall neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents.

**2.6.2.2** The Architect shall report to the Owner known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor. However, the Architect shall not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect shall be responsible for the Architect's negligent acts or omissions, but shall not have control over or charge of and shall not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons or entities performing portions of the Work.

**2.6.2.3** The Architect shall at all times have access to the Work wherever it is in preparation or progress.

**2.6.2.4** Except as otherwise provided in this Agreement or when direct communications have been specially authorized, the Owner shall endeavor to communicate with the Contractor through the Architect about matters arising out of or relating to the Contract Documents. Communications by and with the Architect's consultants shall be through the Architect.

**2.6.2.5** The Architect shall have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees or other persons or entities performing portions of the Work.

**2.6.3   CERTIFICATION OF PAYMENTS TO CONTRACTOR**

**2.6.3.1** The Architect shall review and certify the amounts due the Contractor and shall issue Certificates for Payment in such amounts. The Architect's certification for payment shall constitute a representation to the Owner, based on the Architect's evaluation of the Work as provided in Paragraph 2.6.2 and on the data comprising the Contractor's Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject (1) to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, (2) to results of subsequent tests and inspections, (3) to correction of minor deviations from the Contract Documents prior to completion, and (4) to specific qualifications expressed by the Architect.



© 1997  A I A ®
AIA DOCUMENT B141-1997
STANDARD FORM
SERVICES

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

**2-7**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**2.6.3.2** The issuance of a Certificate for Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**2.6.3.3** The Architect shall maintain a record of the Contractor's Applications for Payment.

**2.6.4   SUBMITTALS**
**2.6.4.1** The Architect shall review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action shall be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**2.6.4.2** The Architect shall maintain a record of submittals and copies of submittals supplied by the Contractor in accordance with the requirements of the Contract Documents.

**2.6.4.3** If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Architect shall specify appropriate performance and design criteria that such services must satisfy. Shop Drawings and other submittals related to the Work designed or certified by the design professional retained by the Contractor shall bear such professional's written approval when submitted to the Architect. The Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals.

**2.6.5   CHANGES IN THE WORK**
**2.6.5.1** The Architect shall prepare Change Orders and Construction Change Directives for the Owner's approval and execution in accordance with the Contract Documents. The Architect may authorize minor changes in the Work not involving an adjustment in Contract Sum or an extension of the Contract Time which are consistent with the intent of the Contract Documents. If necessary, the Architect shall prepare, reproduce and distribute Drawings and Specifications to describe Work to be added, deleted or modified, as provided in Paragraph 2.8.2.

**2.6.5.2** The Architect shall review properly prepared, timely requests by the Owner or Contractor for changes in the Work, including adjustments to the Contract Sum or Contract Time. A properly prepared request for a change in the Work shall be accompanied by sufficient supporting data and information to permit the Architect to make a reasonable determination without extensive investigation or preparation of additional drawings or specifications. If the Architect



© 1997   A I A ®
AIA DOCUMENT B141-1997
STANDARD FORM
SERVICES

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

2-8

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

determines that requested changes in the Work are not materially different from the requirements of the Contract Documents, the Architect may issue an order for a minor change in the Work or recommend to the Owner that the requested change be denied.

2.6.5.3 If the Architect determines that implementation of the requested changes would result in a material change to the Contract that may cause an adjustment in the Contract Time or Contract Sum, the Architect shall make a recommendation to the Owner, who may authorize further investigation of such change. Upon such authorization, and based upon information furnished by the Contractor, if any, the Architect shall estimate the additional cost and time that might result from such change, including any additional costs attributable to a Change in Services of the Architect. With the Owner's approval, the Architect shall incorporate those estimates into a Change Order or other appropriate documentation for the Owner's execution or negotiation with the Contractor.

2.6.5.4 The Architect shall maintain records relative to changes in the Work.

### 2.6.6  PROJECT COMPLETION

2.6.6.1 The Architect shall conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, shall receive from the Contractor and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract Documents and assembled by the Contractor, and shall issue a final Certificate for Payment based upon a final inspection indicating the Work complies with the requirements of the Contract Documents.

2.6.6.2 The Architect's inspection shall be conducted with the Owner's Designated Representative to check conformance of the Work with the requirements of the Contract Documents and to verify the accuracy and completeness of the list submitted by the Contractor of Work to be completed or corrected.

2.6.6.3 When the Work is found to be substantially complete, the Architect shall inform the Owner about the balance of the Contract Sum remaining to be paid the Contractor, including any amounts needed to pay for final completion or correction of the Work.

2.6.6.4 The Architect shall receive from the Contractor and forward to the Owner: (1) consent of surety or sureties, if any, to reduction in or partial release of retainage or the making of final payment and (2) affidavits, receipts, releases and waivers of liens or bonds indemnifying the Owner against liens.

### ARTICLE 2.7 FACILITY OPERATION SERVICES

2.7.1   The Architect shall meet with the Owner or the Owner's Designated Representative promptly after Substantial Completion to review the need for facility operation services.

2.7.2   Upon request of the Owner, and prior to the expiration of one year from the date of Substantial Completion, the Architect shall conduct a meeting with the Owner and the Owner's Designated Representative to review the facility operations and performance and to make appropriate recommendations to the Owner.



© 1997  AIA®
AIA DOCUMENT B141-1997
STANDARD FORM
SERVICES

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

2·9

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**ARTICLE 2.8 SCHEDULE OF SERVICES**

2.8.1   Design and Contract Administration Services beyond the following limits shall be provided by the Architect as a Change in Services in accordance with Paragraph 1.3.3:

.1   up to Three          ( 3     ) reviews of each Shop Drawing, Product Data item, sample and similar submittal of the Contractor.

.2   up to Thirty Six          ( 36     ) visits to the site by the Architect over the duration of the Project during construction.

.3   up to Three          ( 3     ) inspections for any portion of the Work to determine whether such portion of the Work is substantially complete in accordance with the requirements of the Contract Documents.

.4   up to Two          ( 2     ) inspections for any portion of the Work to determine final completion.

2.8.2   The following Design and Contract Administration Services shall be provided by the Architect as a Change in Services in accordance with Paragraph 1.3.3:

.1   review of a Contractor's submittal out of sequence from the submittal schedule agreed to by the Architect;

.2   responses to the Contractor's requests for information where such information is available to the Contractor from a careful study and comparison of the Contract Documents, field conditions, other Owner-provided information, Contractor-prepared coordination drawings, or prior Project correspondence or documentation;

.3   Change Orders and Construction Change Directives requiring evaluation of proposals, including the preparation or revision of Instruments of Service;

.4   providing consultation concerning replacement of Work resulting from fire or other cause during construction;

.5   evaluation of an extensive number of claims submitted by the Owner's consultants, the Contractor or others in connection with the Work;

.6   evaluation of substitutions proposed by the Owner's consultants or contractors and making subsequent revisions to Instruments of Service resulting therefrom;

.7   preparation of design and documentation for alternate bid or proposal requests proposed by the Owner; or

.8   Contract Administration Services provided 60 days after the date of Substantial Completion of the Work.



© 1997   A I A ®
AIA DOCUMENT B141-1997
STANDARD FORM
SERVICES

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-5292

2-10

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**2.8.3** The Architect shall furnish or provide the following services only if specifically designated:

| Services | Responsibility (Architect, Owner or Not Provided) | Location of Service Description |
|---|---|---|
| .1 Programming | Owner with Architect review | |
| .2 Land Survey Services | Owner | |
| .3 Geotechnical Services | Architect | |
| .4 Space Schematics/Flow Diagrams | Architect | |
| .5 Existing Facilities Surveys | Not Provided | |
| .6 Economic Feasibility Studies | Owner | |
| .7 Site Analysis and Selection | Architect | |
| .8 Environmental Studies and Reports | Architect | |
| .9 Owner-Supplied Data Coordination | Architect | |
| .10 Schedule Development and Monitoring | Architect | |
| .11 Civil Design | Architect | |
| .12 Landscape Design | Architect | |
| .13 Interior Design | Architect | |
| .14 Special Bidding or Negotiation | Not Provided | |
| .15 Value Analysis | Not Provided | |
| .16 Detailed Cost Estimating | Architect | |
| .17 On-Site Project Representation | Owner | |
| .18 Construction Management | Not Provided | |
| .19 Start-Up Assistance | Not Provided | |
| .20 Record Drawings | Not Provided | |
| .21 Post-Contract Evaluation | Not Provided | |
| .22 Tenant-Related Services | Not Provided | |
| .23 Septic Testing And Design | Architect | |
| .24 Public Water Supply Design | Owner | |
| .25 Furnishings Selection | Architect | |
| Furnishings Procurement | Owner | |

**Description of Services.**
*(Insert descriptions of the services designated.)*



© 1997 AIA®
**AIA DOCUMENT B141-1997**
**STANDARD FORM**
**SERVICES**

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-529

**2-11**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

**ARTICLE 2.9 MODIFICATIONS**

2.9.1    Modifications to this Standard Form of Architect's Services: Design and Contract Administration, if any, are as follows:

Addendim to the Owner-Architect Agteement, AIA Document B141
(1997 Edition) Between the Town of Boxford , Massachusetts (Owner)
and J. Stewart Roberts Associates, Inc. (Achitect)

By its execution, this Standard Form of Architect's Services: Design and Contract Administration and modifications hereto are incorporated into the Standard Form of Agreement Between the Owner and Architect, AIA Document B141-1997, that was entered into by the parties as of the date:

OWNER *(Signature)*　　　　　　　ARCHITECT *(Signature)*

Neil S. Olansky, Chair
**Board of Selectmen**　　　　　　　J. Stewart Roberts, President
**Town of Boxford, Massachusetts**　　J. Stewart Roberts Associates,Inc.

*(Printed name and title)*　　　　　*(Printed name and title)*



© 1997   A I A ©
**AIA DOCUMENT B141-1997**
**STANDARD FORM**
**SERVICES**

CAUTION: *You should sign an original AIA document or a licensed reproduction. Originals contain the AIA logo printed in red; licensed reproductions are those produced in accordance with the Instructions to this document.*

The American Institute
of Architects
1735 New York Avenue, N.W.
Washington, D.C. 20006-529

**2-12**

WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.

ADDENDUM TO OWNER-ARCHITECT
AGREEMENT
AIA DOCUMENT B141(1997 EDITION)
BETWEEN
THE TOWN OF BOXFORD, MASSACHUSETTS (OWNER)
AND
J. Stewart Roberts Associates, Inc (ARCHITECT)

Initial

ARTICLE 1.1

Subparagraph 1.1.3.5: add the following two sentences:

The Architect shall not employ additional consultants not named herein without the prior written approval and consent of the Owner. Written consent shall not in any way relieve the Architect from his responsibility for the professional and technical accuracy and the coordination of all data, designs, drawings, specifications, estimates and other work or materials furnished, in accordance with the standard of care herein.

Paragraph 1.1.6: insert the phrase ", if any," in line 3 after the word "adjustments."

ARTICLE 1.2

Subparagraph 1.2.2.1: insert the word "available" before the word "information" in lines 1 and 3. Add the following after the word "Project" in line 2: "upon written request by the Architect."

Subparagraph 1.2.2.2: delete the word "shall" in the first line and substitute therefore the word "may." delete the second sentence.

Subparagraph 1.2.2.4: delete this subparagraph in its entirety.

Subparagraph 1.2.2.5: delete this subparagraph in its entirety.

Subparagraph 1.2.2.6: delete the word "all" in line 1, and add the following to the end of the paragraph: ", provided that the Owners shall not be required to provide insurance for the architect or the architect's consultant."

Subparagraph 1.2.2.7: add the following to the end of the paragraph: ", provided any failure to give such notice shall not constitute a waiver by the Owner of any such faults, defects, errors, omissions or inconsistencies."

Subparagraph 1.2.3.2: add the following sentence:

The Architect represents that in performing professional services hereunder it shall use that degree of care and skill ordinarily exercised under similar circumstances by competent members of the design profession practicing in Massachusetts.

Subparagraph 1.2.3.6:  delete this subparagraph in its entirety and substitute therefor the following:

The Architect shall perform the work required under this AGREEMENT in conformity with all requirements and standards of the Owner, all applicable laws, statutes, ordinances, by-laws, codes, rules and regulations, and executive orders of the Commonwealth and its political subdivisions, including the Town of Boxford, and the Federal Government.  The Construction Documents shall comply with all applicable laws, statutes, ordinances, by-laws, codes, rules and regulations, and executive orders and requirements of the Boxford Board of Selectmen.  The Architect, including all approved consultants and subcontractors, shall comply with all applicable provisions of the rules and regulations of the President's Committee on Equal Employment Opportunity and Procedures promulgated by the Governor of Massachusetts or his designees, insuring equal opportunity for employees and minority and women-owned business enterprises.

The Architect shall be responsible for the professional and technical accuracy and the coordination of all designs, drawings, specifications, estimates and other work furnished by him or his consultants and subcontractors, in accordance with generally accepted standards of professional practice.  The Architect shall staff his office with sufficient personnel to complete the services required under this contract in a prompt and continuous manner, and shall meet the approved schedule and submittal dates established during the course of this Agreement, subject only to delays and to causes outside of the Architect's reasonable control, with respect to which extraordinary delays and causes Architect shall provide prompt written notice.

The Architect shall furnish appropriate competent professional services for each of the phases to the point where detail checking and reviewing by the Owner will not be necessary.  Any changes, corrections, additions or deletions made by the Owner shall be incorporated in the design of the Project in the course of the review process consistent with generally accepted standards of professional practice.

The Architect shall thoroughly acquaint his employees and consultants with all provisions of the General Laws governing the conduct of public construction projects including but not limited to M.G.L. c.149 and c.30, and in particular, M.G.L. c.30, §39M, wherein the description of material specifications and proprietary items in construction bid documents is governed.

Subparagraph 1.2.3.7:  insert the following phrase at the end of the first sentence: ", except to the extent that the Architect's review thereof reveals, or in the exercise of reasonable

diligence consistent with professional skill and care should have revealed, any inaccuracy or incompleteness therein."

Subparagraph 1.2.3.8: add the following subparagraph:

The Architect shall, at his own expense, obtain and maintain a professional liability insurance policy for errors, omissions and negligent acts arising out of the performance of this Agreement in a minimum amount of $1,000,000.00. The coverage shall be in force from the time of the Agreement to the date when all construction work is completed and accepted by the Owner. A certificate of insurance shall be provided to the Owner prior to commencement of work hereunder. The Architect shall notify the Owner should coverage become unavailable. Any cancellation of insurance shall not be valid unless written notice thereof is given to the Owner at least fifteen days prior to the intended effective date thereof, which date shall be expressed in said notice.

Subparagraph 1.2.3.9: add the following subparagraph:

The Architect shall defend, indemnify and hold Owner harmless from any claims, costs or expenses on account of bodily injury or property damage which are the result of the Architect's negligence in performing this Agreement or the Architect's failure to comply with the terms of the Agreement.

## ARTICLE 1.3

Subparagraph 1.3.1.3:  Replace the words "or other costs that" in the second line with the word "which."

Paragraph 1.3.2:  delete this paragraph in its entirety and substitute the following:

All drawings, specifications and renderings furnished by the Architect, but not including the Architect's certification or stamp, shall become the property of the Owner upon payment of sums then due to the Architect under this Agreement. Architect agrees to waive and not lay claim to any common law copyright or other reserved right as to the use of such drawings and specifications. Any reuse of such drawings and/or specifications without the Architect's written verification of suitability for the specific purpose intended shall be without liability or legal exposure to the Architect or to the Architect's independent professional associates, subcontractors or consultants. Distribution or submission to meet official regulatory requirements or for other purposes in connection with the Project is not to be construed as an act in derogation of the Architect's rights under this Agreement.

Subparagraph 1.3.3.1:  delete the balance of the fourth sentence after the word "compensation" in line 9 and substitute the following: "as set forth in subparagraph 1.3.3.2." Add the words "in writing" after the word "Owner" in the fifth line.

Subparagraph 1.3.3.2: delete sub-items .3 and .7, and delete the phase "a public hearing," in sub-item .6. Add the word "material" to the beginning of sub-items .1 and .5.

Paragraph 1.3.4: delete this paragraph in its entirety.

Paragraph 1.3.5: delete this paragraph in its entirety.

Paragraph 1.3.6: delete this paragraph in its entirety.

Subparagraph 1.3.7.1: delete this subparagraph in its entirety and substitute the following: "This Agreement shall be governed by the law of the Commonwealth of Massachusetts."

Subparagraph 1.3.7.3: delete this subparagraph in its entirety.

Subparagraph 1.3.7.4: delete this subparagraph in its entirety.

Subparagraph 1.3.7.7: delete the balance of the third sentence after the word "information" in line 4. Delete the last sentence.

Subparagraph 1.3.7.10: add the following subparagraph:

Any defective designs or specifications furnished by the Architect shall be promptly corrected by the Architect at no cost to the Owner, and the Architect will promptly reimburse the Owner for all damages, if any, resulting from the use of such defective designs or specifications. The Owner's approval, acceptance, use of or payment for all or any part of the Architect's services hereunder or of the Project itself shall in no way alter the Architect's obligations or the Owner's rights hereunder.

Subparagraph 1.3.7.11: add the following subparagraph:

Neither the Owner's review, approval or acceptance of, nor payment for any of the services furnished shall be construed to operate as a waiver of any rights under the Agreement or any cause of action arising out of the performance of the Agreement.

## ARTICLE 1.3.8

Subparagraph 1.3.8.1: delete the phrase "fees for the remaining services and the" in the last line. Add the word "due" after the word "payments" in the first line, and add the following after the word "agreement" in the first line: "and such failure shall continue for ten (10) business days following written notice from the Architect,"

Subparagraph 1.3.8.3: change "90" in the first line to "180" and add the following new subparagraph after subparagraph 1.3.8.3:

1.3.8.3.1  Any intervening time between completion of the design and Town Meeting approval of the financing for construction of the Project shall not be considered a suspension under subparagraphs 1.3.8.2 and 1.3.8.3.

Subparagraph 1.3.8.6:  delete all text after the word "due" in line 2.

Subparagraph 1.3.8.7: delete this subparagraph in its entirety.

Subparagraph 1.3.9.2: delete sub-item .6 and substitute the following: "expense of professional liability insurance in excess of that required by law or that normally carried by the Architect and the Architect's Consultants, whichever is higher."  Delete sub-item .8.

<u>ARTICLE 1.5</u>

Paragraph 1.5.2:  add the word "materially" between the words "are" and "changed" in the first line.

Paragraph 1.5.6:  delete the words "and multiples" in line 1.

Paragraph 1.5.7: delete this paragraph in its entirety.

Paragraph 1.5.8: delete the second sentence.

Paragraph 1.5.9:  insert the words "thirty-six" in the blank in line 2 and insert the number 36 in the parenthetical.

<u>ARTICLE 2.1</u>

Subparagraph 2.1.4:  delete the words "a presentation" in the first line, and replace it with "presentations as requested."  Add ", and at town meeting." to the end of the paragraph.

Subparagraph 2.1.7.1:  delete the remainder of the paragraph after the word "budget" in the ninth line.

nitial:

Subparagraph 2.1.7.3: insert the phrase ",upon authorization by the Owner," before the phrase "to include" in line 4.  Delete the last sentence.

<u>ARTICLE 2.2</u>

Subparagraph 2.2.1.1:  add the following between the words "a" and "program" in the first line:  "preliminary, internally generated"  Add the following to the end of the paragraph:  "; and Architect, at no additional cost to Owner, shall re-establish all of the foregoing programmatic requirements and parameters following detailed space needs data generated by Architect."

Subparagraph 2.2.1.2: insert the word "available" before the word "surveys" in line 1, and insert the words "if available" after the word "site" in line 2.

Subparagraph 2.2.1.3: delete this subparagraph in its entirety.

## ARTICLE 2.3

Subparagraph 2.3.2:  add the following to the end of the paragraph:

Architect will be responsible for siting the Building in the most efficient and esthetic manner in light of all constraints, including but not limited to, the proximity of existing and potential future municipal structures.

## ARTICLE 2.4

Subparagraph 2.4.1:  add the word "geo-technical" between the words "normal"  and "structural" in the first line; and add the following to the end of the paragraph:  ", and interior design, furniture design and selection, and landscape architecture."

## ARTICLE 2.5

Subparagraph 2.5.4.2: insert the following at the beginning of the second sentence: "Unless otherwise included in the Architect's compensation,".

## ARTICLE 2.6

Subparagraph 2.6.1.1: add the words "as modified by the Owner" at the end of the first sentence.

Subparagraph 2.6.1.2: delete the second sentence and insert the following at the end of the first sentence: "and the Owner's written acceptance of the completed Project."

Subparagraph 2.6.1.4: delete all text after the word "Architect" in line 2.

Subparagraph 2.6.1.5: delete the comma after the word "prepared" in line one and delete the following word, "timely."

Subparagraph 2.6.1.8: delete the second sentence.

Subparagraph 2.6.1.9: add the following at the end of the second sentence: ", subject, however, to the final approval of the Owner."

Initial:

*[signatures]*

Subparagraph 2.6.2.1: delete this subparagraph in its entirety and substitute the following:

The architect shall visit the site at least once a week, every two weeks, or such other, more frequent intervals appropriate to the stage of construction or as otherwise agreed by the Owner and Architect to become familiar in detail with the progress and quality of the Work completed and to determine in detail if the Work is proceeding in accordance with all the requirements of Contract Documents and all applicable laws, statutes, ordinances, codes, rules, regulations, orders, decrees and executive orders. The Architect shall promptly submit to the Owner a detailed written report subsequent to each such on-site visit. In addition, the Architect shall keep a log of all job modifications, Architect supplementary instructions and change orders, submittals and shop drawings. The Architect shall exercise the utmost care and diligence in discovering and promptly reporting to the Owner any defects or deficiencies in the work of the contractor or any of its subcontractors, or their agents or employees, or any other person performing any of the Work in the construction of the Project. The Architect shall not have control over or charge of, nor be responsible for, the construction means, methods, techniques or procedures of the Contractor, or for the Contractor's safety precautions and programs in connection with the Work.

Subparagraph 2.6.2.2: delete the second sentence and delete the balance of the third sentence after the word "omissions" in line 4.

Subparagraph 2.6.2.5: insert the words "the responsibility and" before the word "authority" in line 1 and line 2. Add the following at the end of the second sentence: "provided, however, the Architect must obtain the Owner's prior written approval of any such special inspection or testing."

Subparagraph 2.6.4.1: insert the words ", keep a log of" after the word "review" in line 1. Delete the phrase "but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents" in lines 2 and 3 and substitute the following: "for the purpose of compliance with applicable laws, statutes, ordinances, by-laws, codes, executive orders, rules and regulations and determining whether or not the Work when completed, will be in compliance with the requirements of the Contract Documents." Add the following the end of the paragraph: "Actions taken regarding submittals shall be recorded in the minutes of the job meetings."

Subparagraph 2.6.5.2: delete the comma after the word "prepared" in line 1 and delete the following word, "timely."

ARTICLE 2.8

Paragraph 2.8.1: add the following to subparagraph 2.8.1.1: "but only to extent that the Contract Documents specify that the Contractor is responsible for the Architect's costs in performing additional reviews and authorize the Owner to charge such costs against amounts payable to the Contractor."

Subparagraphs 2.8.1.3 and 2.8.1.4: insert the following at the end of each subparagraph: "but only to the extent that the Contract Documents specify that the contractor is responsible for the Architect's costs in conducting such additional inspections and authorize the Owner to charge such costs against amounts payable to the Contractor.

Paragraph 2.8.2: insert the following at the end of subparagraphs 2.8.2.1 and 2.8.2.2: "but only to the extent that the Contract Documents specify that the Contractor is responsible for the Architect's costs in reviewing such submittals or responding to such requests and authorize the Owner to charge such costs against amounts payable to the Contractor." Add the following sentence at the end of the paragraph: "Additional compensation shall not be due on account of services performed by the Architect and his consultants necessitated by errors or omissions on the part of the Architect and his consultants."

Delete the words "evaluation of proposals, including the preparation or" in subparagraph 2.8.2.3.

Initial:

~~Delete subparagraph 2.8.2.8.~~

Subparagraph 2.8.2.8:  Change "60 days" to "180 days".

8