UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAYBUTT CONSTRUCTION CORPORATION,<br>    Plaintiff<br><br>v.<br><br>J. STEWART ROBERTS ASSOCIATES, INC.<br>    Defendant | )<br>)<br>)<br>)<br>)   No. 04-10870-MLW<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT J. STEWART ROBERTS ASSOCIATES, INC. 'S
SECOND SET OF INTERROGATORIES PROPOUNDED TO
<u>PLAINTIFF BAYBUTT CONSTRUCTION CORPORATION</u>**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, the defendant, J. Stewart Roberts Associates, Inc. ("JSR"), hereby propounds the following second[1] set of interrogatories to the plaintiff, Baybutt Construction Corporation ("Baybutt"), to be answered fully, in writing and under oath, within thirty (30) days from the date of service in accordance with the instructions and definitions contained herein.

**<u>DEFINITIONS AND INSTRUCTIONS</u>**

1.      "JSR," as used herein, refers to the defendant, J. Stewart Roberts Associates, Inc., its predecessors, successors, affiliates, co-venturers, divisions, parents, or subsidiaries, and any of their past or present directors, officers, employees, servants, attorneys, agents, representatives, and any other person or entity acting or purporting to act on behalf of any of them or at their request.

2.      "Baybutt," "you" and "your," as used herein, refers to the plaintiff, Baybutt Construction Corporation ("Baybutt"), its predecessors, successors, affiliates, co-venturers,

---

[1] These interrogatories are the first interrogatories JSR has served upon Baybutt since it amended its Complaint.

divisions, parents, or subsidiaries, and any of their past or present directors, officers, employees, servants, attorneys, agents, representatives, and any of their past or present directors, officers, employees, servants, attorneys, agents, representatives, and any other person or entity acting or purporting to act on behalf of any of them or at their request.

3. "Boxford," as used herein, refers to the Town of Boxford, its agents, employees, servants, representatives, and any other person or entity acting or purporting to act on its behalf or at its request.

4. The "Project," as used herein, means the design and construction of the Boxford Town Hall.

5. "Complaint," as used herein, means the amended complaint filed by Baybutt in the United States District Court for the District of Massachusetts, Civil Action No. 04-10870-MLW.

6. "Document" or "documents" shall be construed in the broadest sense permitted under Rule 34 of the Federal Rules of Civil Procedure and includes, but is not limited to, all writing, notes, memoranda, e-mails, books, records, reports, diaries, calendars, films, photographs, microfilm, microfiche, sound recordings, charts, tables, graphs, drawings, correspondence, computer printouts, information in computer databases, computer tapes, magnetic or optical disks, and all other media containing electronically encoded data or information, and shall also include all drafts and non-identical copies of any document.

7. "Identify" (with respect to persons). When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, the present or last known place of employment.

8. "Identify" (with respect to documents). When referring to documents, to "identify" means to give, to the extent known, the (a) type of document, (b) general subject matter, (c) date of the document, and (d) author(s), addressee(s) and recipient(s).

9. "Person" means any natural person, business entity, firm, corporation, unincorporated association, division, subsidiary, partnership, proprietorship, university or government body, including their directors, officers, employees, servants, attorneys, agents and representatives.

10. "Communication" means the receipt or transmission of any word, fact, idea, inquiry, proposal, information or advice orally, visually, in writing, by electronic transmission or by any means or medium.

11. "Concerning," "regarding," and "relating to" mean in any way referring to, pertaining to, describing, memorializing, evidencing, constituting or containing.

12. "State the basis." When an interrogatory calls upon a party to "state the basis" of or for a particular claim, assertion or contention, the party shall:

(a) identify each and every document (and, where pertinent, the section, article, or subparagraph thereof), which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(b) identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;

(c) state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

13. "And" and "or" each shall be construed both conjunctively and disjunctively to bring within the scope of the interrogatory all responses that might otherwise be construed to be outside its scope; in other words, to give each interrogatory its broadest possible meaning.

14. As to information responsive to these interrogatories for which Baybutt claims a privilege, or which Baybutt claims are not subject to discovery, please provide a list describing: (a) the general subject matter of the information; (b) the identity of each person who had, or who currently has, possession of the information; and (c) the factual and/or legal bases for the claim of privilege or ground for non-disclosure with respect to the information.

## **GENERAL OBJECTIONS**

These General Objections are incorporated into each of Baybutt's answers as if fully set forth in full and will not be repeated therein.

1. Baybutt objects to each and every discovery request to the extent that it seeks information that is protected by the attorney-client privilege or the attorney work product privilege or is otherwise protected from discovery under applicable law.

2. Baybutt objects to each and every discovery request to the extent that it purports to request information that is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

3. Baybutt objects to each and every discovery request which calls for extensive and unreasonable investigatory work on its part and is unduly burdensome, or which improperly seeks to compel Baybutt to characterize facts.

4. Any objection or lack of objection to any discovery request is not to be deemed an admission that Baybutt possesses documents or information responsive to the particular request. Baybutt does not concede the relevancy, materiality, competency or admissibility as evidence of

the information requested and, notwithstanding any responses thereto, Baybutt reserves its right to object at trial to the admissibility of any responses.

5.     Baybutt's responses are based on its best efforts.  Baybutt reserves the right to supplement its responses and objections prior to trial.

## INTERROGATORIES

### INTERROGATORY NO. 1

Please identify the person answering these interrogatories, including that person's full name, date of birth, residential address, business address, employer and title.

> Fred Baybutt, dob:  9/14/59;
> Residential Address:  674 West St., Keene, NH 03431
> Business Address:  25 Avon St., P.O. Box 463, Keene, NH 03431-0463
> Employer:  Baybutt Construction Company,  Title:  President

### INTERROGATORY NO. 2

For each individual who assisted in the preparing the answers to these interrogatories, identify each individual and following the identity of each individual, list the number of each interrogatory for which that individual provided assistance.

> Interrogatories 1-8, 10-15: Frederick L. Baybutt
>
> Interrogatories 3, 5-7, 12-15: Mike Fraser
>
> Interrogatories 3, 5-6, 12-15: Jeff Bodeur
>
> All interrogatories:  Frank P. Spinella, Jr. (as to form)

**INTERROGATORY NO. 3**

Please state the basis for your contention in Paragraph 43 of the Complaint that defects in the design of the fire pump resulted in delays in substantial completion of the project, forcing Boxford to incur additional costs for space for its municipal facilities.

> As to the defective design of the fire pump causing the delay to substantial completion, the project would have been substantially completed by September 30, 2003, but for the problems with the fire pump. Work on that fire pump went on throughout the fall of 2003 – an authorization to proceed on a T & M basis was not provided by JSR until October 24 – and could not have been completed earlier given the waiting time for answers from JSR/B.E.R. and the time needed to acquire and install all necessary components. (While other items unrelated to the fire pump but needed in order to achieve substantial completion also were done in the fall, these items could have been done earlier had Baybutt so chosen, but there was no longer a rush to complete them given the known delays associated with the fire pump.)

> As to the Boxford's lease issues, see Exhibit 7 to O'Brien deposition, item 50.5.

> As to the resulting costs to Boxford, see Benson deposition.

**INTERROGATORY NO. 4**

Please state the basis for your contention in Paragraph 44 of the Complaint that as a result of change orders and as a result of extra costs incurred by Baybutt due to deficiencies in design which did not result in formal change orders, Boxford has already incurred liability to Baybutt culminating in a judgment in the amount of $263,000, and will incur additional liability to Baybutt for its "time and materials" to address the leaks in Room 106 and the heating imbalances you claim occurred.

> Boxford has confessed judgment in favor of Baybutt in the amount of $263,000 for extra costs incurred by Baybutt resulting from the misdesign of the fire pump, misdesign of

6

precast connections and various other items – all of which are summarized in the attached change order request log.

Additional liability to Baybutt arises from Boxford's concession that the leaks in Room 106 and the heating imbalances will now be the subject of change orders, to be paid for on a time and materials basis – and as both Baybutt and Boxford agree that these two problems are design related, Boxford has assigned to Baybutt the right to pursue JSR for payment therefor.

## **INTERROGATORY NO. 5**

Please state the basis for contention in Paragraph 41(a) of the Complaint that JSR failed to design a fire pump vault which was code compliant.

> See attached fax from R.T. Stearns to Baybutt dated October 6, 2003.  B.E.R. (JSR's subcontractor) did not design the control panel for the fire pump system to be located within the fire pump vault as required by NFPA 20.  See Exhibit 4 to O'Brien deposition.  (JSR has already admitted this "screw-up" to the Owner; see Benson deposition Tr. 46.)
>
> Baybutt notes that the redeisgn of the vault had difficulties of its own (see attached emails dated 11/4/03).  Baybutt understands this interrogatory, however, to refer to the initial design.

## **INTERROGATORY NO. 6**

Please state the basis for contention in Paragraph 41(b) of the Complaint that JSR failed to furnish drawings and specifications which, if followed by the contractor, would prevent rain water from leaking into the building.

> Particularly in Room 106, there have been regular leaks after significant rain events (water runs down the face of the precast and face of the brick, and filters through into the room) despite Baybutt's having followed the design initially furnished by JSR (which did not include a thru wall flashing detail for this area, see Exhibit 23 to O'Brien deposition), and despite numerous efforts to install thru wall flashing afterwards (see Exhibit 26 to O'Brien deposition), and to seal and waterproof the area.

7

**INTERROGATORY NO. 7**

Please state the basis for contention in Paragraph 41(c) of the Complaint that JSR failed to furnish drawings and specifications which, if followed by the contractor, would prevent precast cornices from separating from adjacent concrete walls.

See attached report from Robert Brecknock, P.E.

**INTERROGATORY NO. 8**

Please state the basis for contention in Paragraph 41(d) of the Complaint that JSR failed to furnish drawings and specifications which, if followed by the contractor, would prevent hearing imbalances from room to room in the building.

> The design furnished by JSR was followed by Baybutt's mechanical subcontractor Thomas E. Snowden, Inc., but heating imbalances nevertheless occurred. See attached letter dated November 6, 2003 from Richard N. Barbolla to Baybutt; letter dated February 10, 2004 from Richard Barbolla to Baybutt; letter dated February 10, 2004 from Air Balance, Inc. to Thomas E. Snowden, Inc.; letter dated February 11, 2004 from Richard N. Barbolla to Baybutt; letter dated March 11, 2004 from Richard N. Barbolla to Baybutt; letter dated March 11, 2004 from Richard N. Barbolla to Baybutt; letter dated March 30, 2004 from Richard N. Barbolla to Baybutt; letter dated March 31, 2004, from Baybutt to Boxford.
>
> 2 residential grade air handling units were approved for installation; commercial grade is required. Phil O'Brien of JSR suggested that the RPM's on the motor be "cranked up" to compensate, but Snowden, Baybutt's mechanical sub, informed Baybutt that this will not work.
>
> Phil O'Brien of JSR directed Snowden, Baybutt's mechanical sub, to make longer runs and bends in its ductwork in order to avoid beams and coiling doors, even though Snowden declined to guaranty that this would work.

**INTERROGATORY NO. 9**

Please identify the specific clause within JSR's contract with Boxford upon which you rely for your contention in Paragraph 45 of the Complaint that JSR has an obligation to indemnify Boxford from any and all claims, costs or expenses on account of the claims asserted in the Amended Complaint.

> The indemnity obligation referred to is both express and implied by law. The pertinent contract provisions include:
>
> AIA Document B141-1997 § 2.6.2.2 states in pertinent part: "The Architect shall be responsible for the Architect's negligent acts or omissions. . ."
>
> The Addendum to this Document adds the following sentence to § 1.2.3.2: "The Architect represents that in performing professional services hereunder it shall use that degree of care and skill ordinarily exercises under similar circumstances by competent members of the design profession practicing in Massachusetts."
>
> Addendum § 1.2.3.6 provides, *inter alia*: "The Construction Documents shall comply with all applicable laws, statutes, ordinances, by-laws, codes, rules and regulations. . . The Architect shall be responsible for the professional and technical accuracy and the coordination of all designs, drawings, specifications, estimates and other work furnished by him or his consultants and subcontractors, in accordance with generally accepted standards of professional practice."
>
> Addendum § 1.2.3.9 states: "The Architect shall defend, indemnify and hold Owner harmless from any claims, costs or expenses on account of bodily injury or property damage which are the result of the Architect's negligence in performing this Agreement or the Architect's failure to comply with the terms of the Agreement."
>
> Addendum § 1.3.7.10 states: "Any defective design or specifications furnished by the Architect shall be promptly corrected by the Architect at no cost to the Owner, and the Architect will promptly reimburse the Owner for all damages, if any, resulting from the use of such defective designs or specifications."

**INTERROGATORY NO. 10**

Please state the terms of any agreement which forms the basis of your contention in Paragraph 46 of the Complaint that Baybutt has been assigned by Boxford all of Boxford's contract claims against JSR to include:

    a.    The date of the agreement
    b.    The names, addresses and telephone numbers of the individuals who signed such agreement on behalf of you and Boxford
    c.    The terms of any such agreement
    d.    Whether this agreement was reduced to written form

<u>See</u> attached Settlement and Assignment Agreement dated June 29, 2006.

**INTERROGATORY NO. 11**

Have you received any payments from Boxford in satisfaction of the judgment of $263,000 to which you refer in Paragraph 44 of the Complaint? If your answer is yes, please state the amount Boxford has paid to date, and the date of payment(s).

No.

**INTERROGATORY NO. 12**

When did you or Boxford first become aware that the fire pump vault was not code compliant?

    OBJECTION: This Interrogatory seeks information which was already at issue in the lawsuit prior to the Amended Complaint, which alone sets the parameters for additional discovery. Without waiving said objection, Baybutt states:

10

On or about October 2, 2003 (see attached fax dated October 6, 2003 from R T Stearns to Baybutt).

### INTERROGATORY NO. 13

When did you or Boxford first become aware that the rain water was leaking into the building?

OBJECTION: This Interrogatory seeks information which was already at issue in the lawsuit prior to the Amended Complaint, which alone sets the parameters for additional discovery. Without waiving said objection, Baybutt states:

On or about September 24, 2003 (see Daily Log #323).

### INTERROGATORY NO. 14

When did you or Boxford first become aware that the precast cornices separate from the adjacent concrete walls?

OBJECTION: This Interrogatory seeks information which was already at issue in the lawsuit prior to the Amended Complaint, which alone sets the parameters for additional discovery. Without waiving said objection, Baybutt states:

They did not so separate, thanks to additional measures taken by Baybutt (steel clip angles welded back to the structural steel) that were not in JSR's original design – which had the masonry ties anchored to light gauge metal studs that would not have overcome the outward force of the precast cornices.

### INTERROGATORY NO. 15

When did you or Boxford first become aware that there were heating imbalances from room to room in the building?

OBJECTION: This Interrogatory seeks information which was already at issue in the lawsuit prior to the Amended Complaint, which alone sets the parameters for additional discovery. Without waiving said objection, Baybutt states:

On or about November 4, 2003 (see attached letter dated November 6, 2003, from Snowden to Baybutt).

## ACKNOWLEDGMENT

I affirm that the foregoing answers to interrogatories are true and accurate to the best of my belief, information and knowledge.

                                                BAYBUTT CONSTRUCTION CORPORATION


                                                By:  /s/ Fred Baybutt
                                                        Fred Baybutt, President


**STATE OF NEW HAMPSHIRE**
**COUNTY OF MERRIMACK**

Subscribed and sworn to before me this 10th day of October, 2006, by Fred Baybutt in his capacity as President of Baybutt Construction Corporation.


                                               _____
                                               Notary Public/Justice of the Peace
                                               My commission expires: